Brian Koegle (SBN 218800)
Brian.Koegle@gmlaw.com
GREENSPOON MARDER LLP
1875 Century Park East, Suite 1850
Los Angeles, California 90067
Telephone: (661) 550-1450

Kelly M. Purcaro (To Apply *Pro Hac Vice*)
Kelly.Purcaro@gmlaw.com
Kory Ann Ferro (To Apply *Pro Hac Vice*)
KoryAnn.Ferro@gmlaw.com
GREENSPOON MARDER LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 900
Newark, New Jersey 07102
Telephone: (732) 456-8734 or 8746

Attorneys for Plaintiff Pasiphae Holdings, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PASIPHAE HOLDINGS, INC., a Florida Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SE LOGISTIX, CORP., a California Corporation; FRANK SAWAF, a/k/a FAISAL M. ALSAWAF; DELMAR COMMERCIAL REAL ESTATE SERVICES, a California Corporation; GHAZI ASHKAR; JOHN DOES 1-10; and ABC CORPS. 1-10, <br><br> Defendants. | Case No.   5:23-CV-186 <br><br> VERIFIED CIVIL COMPLAINT <br><br> 1. Possession of Personal Property and Damages (Claim and Delivery) <br> 2. Breach of Contract; <br> 3. Breach of Implied Covenant of Good Faith and Fair Dealing; <br> 4. Conversion; <br> 5. Intentional Misrepresentation; <br> 6. Negligent Misrepresentation; <br> 7. Concealment; <br> 8. False Promise; <br> 9. Intentional Interference with Prospective Economic Relations; <br> 10. Negligent Interference with Prospective Economic Relations; <br> 11. Violations of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code, § 17200 et. seq. <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Pasiphae Holdings, Inc., a Florida Corporation ("Pasiphae"), by and through its attorneys, complains of Defendants SE Logistix, Corp., Frank Sawaf

a/k/a Faisal M. Alsawaf, Delmar Commercial Real Estate Services, Ghazi Ashkar, John Does 1-10, and ABC Corps. 1-10 as follows:

## INTRODUCTION

1.    This case arises out of the astonishing and nefarious business practices of Defendants and their ongoing efforts to defraud, harm, and extort Plaintiff out of its property.

2.    Less than a year ago, Pasiphae contracted with Frank Sawaf a/k/a Faisal M. Alsawaf and his business, SE Logistix, Corp., to store approximately $5,000,000.00 worth of personal protective equipment (PPE) gloves (the "Product" as defined in detail below) in their warehouse pending Pasiphae's sale of same to third-party buyers.

3.    Much to Pasiphae's shock and dismay, rather than simply store the Product for the agreed upon price, these Defendants unilaterally declared an inflated storage price, withheld Pasiphae's access to its own Product, and falsely represented that Sawaf and his company own Pasiphae's Product.

4.    To make matters worse, Sawaf and his company are actively marketing and attempting to sell Pasiphae's Product to unsuspecting buyers.

5.    Sawaf and his company are believed to have fraudulently received over $350,000.00 in ill-gotten gains through this on-going scheme.

## THE PARTIES

6.    Pasiphae is a Florida corporation with its principal place of business located at 115 East Palm Midway, Miami Beach, Florida 33139.

7.    Defendant SE Logistix, Corp. ("SE Logistix"), is a California corporation with its principal place of business located at 22369 Quiet Bay Drive, Corona, California 92883.

8.    SE Logistix is a privately owned and operated, third party logistics (3PL) services provider with a "focus on the high volume of imported goods from around the world, SE Logistix has uniquely positioned itself to become a leading

2

provider     of     3PL     services     in     Southern     California." *See*
https://www.linkedin.com/in/frank-sawaf-61555515/ (last viewed January 20, 2023).

9.    Defendant Frank Sawaf, a/k/a Faisal M. Alsawaf ("Sawaf"), is the
CEO, CFO, and Secretary of Defendant SE Logistix and, upon information and
belief, resides in Corona, California.

10.    Defendants SE Logistix and Sawaf are referred to herein collectively as
"SE Defendants."

11.    Defendant Delmar Commercial Real Estate Services ("Delmar") is a
California corporation with its principal place of business located at 10300 4th Street,
Suite 100, Rancho Cucamonga, California and the owner and landlord of the 6th
Street Warehouse (as defined below).

12.    Upon information and belief, Defendant Ghazi Ashkar ("Ashkar")
resides in Rancho Cucamonga, California and is the lessee of the 6th Street
Warehouse (as defined below) and the sublessor of the 6th Street Warehouse to the
SE Defendants.

13.    The true names and capacities, whether individual, corporate, associate,
or otherwise, of the Defendants sued herein as John Does 1-10 and ABC Corps. 1-
10, are currently unknown to Pasiphae, which has therefore sued said defendants by
such fictitious names (collectively the "Doe Defendants"). The Doe Defendants may
include individuals and/or corporations whose real identities are not yet known, but
who are acting in concert with one another as part of the Defendant's scheme in
committing the unlawful acts alleged herein. Pasiphae will seek leave to amend this
Complaint to state the true names and capacities of the Doe Defendants if and upon
discovery of the identities and capacities of same. Pasiphae is informed and believes,
and on that basis avers, that the Doe Defendants sued herein are or may be liable to
Pasiphae as a result of their participation in all or some of the acts set forth in this
Complaint.

VERIFIED COMPLAINT

14.     Defendants SE Logistix, Sawaf, Delmar, Ashkar, and the Doe Defendants are referred to herein collectively as "Defendants."

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity of citizenship), as all Defendants are citizens of states different from Plaintiff, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(1), because all defendants reside in this State and one defendant resides in this district.

17.     Venue is also proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

18.     Pasiphae is a wholesale supplier of PPE products specializing in COVID-19 testing kits, medical grade gloves, etc.  Pasiphae purchases such products from distributors and sells them to small businesses, government entities, and hospitals.

19.     In order to source PPE and secure buyers, Pasiphae works with third party sourcing agents.  In this instance, Pasiphae secured the Product relying upon third party sourcing agent Medavations, Inc. ("Medavations").  Medivations acts, at times, as an agent of Pasiphae.

20.     When PPE products are sold in the United States, purchasers typically require a physical inspection by qualified inspectors prior to finalizing the sale.  This vital step in the sale of PPE products permits buyers to confirm product quantity and quality.  Pasiphae has worked with and has relationships with many of the qualified inspectors in the industry due to the nature of its business.

VERIFIED COMPLAINT

21.    At the height of the COVID-19 pandemic, PPE products were purchased and sold at a high premium, but, as the pandemic waned, the value of PPE products depreciated in the marketplace.

22.    The delays and obstruction engendered by Defendants as detailed herein resulted in Pasiphae's Product significantly declining in value both because of the passage of time and due to confusion in the marketplace caused directly by the SE Defendants marketing the Product as their own at a significantly reduced rate.

23.    On March 4, 2022, Pasiphae purchased One Hundred Seventy-Nine Thousand One Hundred and seventy boxes (179,170)[1] (each containing 300 units) of Cranberry Evolve 300 CT Nitrile Powder-Free Examination Gloves (the "Product") at a rate of $27.50 per box for a total purchase price of $4,927,725.00 directly from the Cranberry Distributor, AM Global Supply Inc ("AM Global"), located in Corona, California.   A copy of Invoice No. CR1972 reflecting such purchase is attached as **Exhibit "A."**

24.    Medavations sourced the Product from AM Global on behalf of Pasiphae.

25.    On March 9, 2022, two inspectors completed a Proof of Life Inspection of the Product for Medavations to verify that the Product was at AM Global and in good condition for purchase.

26.    On March 21, 2022, Pasiphae paid AM Global $1,000,000.00 for the Product via wire transfer.

27.    On March 25, 2022, Pasiphae paid AM Global $3,927,725.00 for the balance owed on Product via wire transfer.

28.    At the time of Pasiphae's purchase of the Product, Medavations had secured a purchaser, MRD Trading & Contracting ("MRD"), for the Product on behalf of Pasiphae.   The forthcoming purchase by MRD was reflected in a Full

---

[1] The Invoice for the purchase of the Product reflects 179,190 boxes, but the actual amount ultimately delivered, as detailed herein, was 178,970 boxes, and the balance remains with AM Global.

VERIFIED COMPLAINT

Corporate Offer executed by MRD, Sales and Purchase Agreement executed by Medavations and MRD, Commercial Invoice No. 2421-1 issued by Medavations, and a Proof of Life Inspection Agreement executed by MRD.

29.    MRD was unable to inspect the product at AM Global and therefore required that the Product be shipped and stored at a warehouse in California for a short period of time, anticipated to be five to seven days, to facilitate the inspection and sale of the Product.

30.    Medavations was aware of the SE Defendants in the industry as a warehouse owner and contacted the SE Defendants to facilitate the storage of the Product for Pasiphae.

31.    The SE Defendants originally operated their 3PL business at a warehouse located at 4205 East Brickell Street, Ontario, California (the "Brickell Warehouse").

32.    Upon information and belief, the lessee of the Brickell Street warehouse was Solaryna Energy ("Solaryna"), a California Company, for which Sawaf is the CEO, CFO, and Secretary.

33.    On March 16, 2022, Medavations and the SE Defendants engaged in an email exchange with Sawaf discussing the SE Defendants' price list and quotations for sixteen truckloads (which ultimately was reduced to only eleven truckloads) of the Product to be picked up from Corona, California and dropped off to Ontario, California.

34.    In the March 16, 2022 exchange, Medavations requested that SE Logistix's market rate quotation be addressed to Pasiphae as the owner of the Product and, in response, SE Logistix provided its Price List and Quotation for the transportation to Medavations on March 16, 2022 and Medavations forwarded same to Pasiphae the same day.

35.    The Price List furnished by the SE Defendants indicated a cost of $35.00 per pallet (48 x 40 x 72" size) for ongoing monthly storage.  As detailed

VERIFIED COMPLAINT

below, Pasiphae's Product amounted to 286 pallets for a total monthly storage cost of $10,010.00.  A copy of SE Logistix's Price List is attached as **Exhibit "B."**

36.    SE Logistix's March 16, 2022 Quotation prepared by Sawaf, further indicated shipping costs of $7,600.00 for transportation from Corona, California to Ontario, California. A copy of SE Logistix's Quotation is attached as **Exhibit "C."**

37.    Based upon SE Logistix's Price List and Quotation, Pasiphae agreed to transport and store the Product at SE Logistix's Brickell Warehouse.

38.    The SE Defendants, Pasiphae, and Medavations then began communicating and coordinating via phone, WhatsApp, text message, and email.

39.    On March 24, 2022, Sawaf specifically acknowledged that he was simply storing Pasiphae's Product in SE Logistix's warehouse stating, "Anything regarding the storage of your products in our warehouse is not a problem at all."  A copy of this WhatsApp message is attached as **Exhibit "D."**

40.    Pasiphae's Director and President, Federico Drada ("Drada"), flew to California on March 24, 2022 and remained there until March 31, 2022 to oversee the movement of the Product and met Sawaf during the trip.

41.    On March 24, 2022, Sawaf confirmed via WhatsApp messages receipt of the first delivery of Pasiphae's Product at the Brickell Warehouse including video stating "Bryan, Federico, this is your stuff.  Okay.  We are unloading right now.  I'll let you know."

42.    On March 24, 2022, Sawaf also sent, via WhatsApp, a Packing List prepared by AM Global signed by SE Logistix verifying receipt of the first 1,628 cases of the Product.

43.    The trucking company secured by the SE Defendants to move the Product to the Brickell Warehouse completed delivery of seven truckloads of the Product and then ceased being responsive.  As such, Drada secured alternative trucking with US-GS Group Inc. ("US-GS") to transport the remaining four truckloads of the Product.

VERIFIED COMPLAINT

44.    When delivery of the Product to the Brickell Warehouse was complete, Drada performed an onsite, visual inspection.

45.    Bills of Lading dated March 24-30, 2022 were created by the SE Defendants and signed off on by SE Logistix verifying that 17,897[2] cases of the Product were transferred from Amwear Safety Pro Inc. ("Amwear")[3] in Corona, California to Pasiphae at SE Logistix's Brickell Warehouse in Ontario, California.

46.    Specifically, the Bills of Lading provide as follows:

| Date | Number of Cases |
|---|---|
| March 24, 2022 | 1,628 |
| March 25, 2022 | 1,629 |
| March 26, 2022 | 6,516 (4 x 1,629 each) |
| March 28, 2022 | 1,629 |
| March 29, 2022 | 3,237 (1 x 1,629 and 1 x 1,608 with an indication that 1,629 was supposed to be received, but only 1,608 were received) |
| March 30, 2022 | 3,258 (2 x 1,629 each) |
| TOTAL | 17,897 |

Copies of the Bills of Lading are attached as **Exhibit "E."**

47.    On March 24, 2022, the SE Defendants issued Invoice No. 2033 for $1,350.00 for trucking services related to the first two truckloads of the Product.

48.    On March 25, 2022, US-GS issued Invoice No. 032522001 in the amount of $4,050.00 for the trucking fee to transport the remainder of the Product that the SE Defendants' truckers did not deliver, which Pasiphae later paid.

49.    On March 28, 2022, Pasiphae paid $1,000.00 to the SE Defendants via Zelle towards Invoice No. 2033.

50.    On March 29, 2022, the SE Defendants issued Invoice No. 2046 for $2,575.00 for trucking services related to five truckloads of the Product.

51.    On March 30, 2022, SE Logistix issued a Statement to Pasiphae consisting of three Invoices as follows: (1) No. 2033 previously issued; (2) No. 2046 previously issued; and (3) No. 111 dated March 30, 2022 for $11,440.00 for

---

[2] There were ten boxes per case for a total of 178,970 boxes, which is 220 boxes less than the 179,190 boxes purchased by Pasiphae as detailed above.
[3] Upon information and belief, Amwear is a company related AM Global.

VERIFIED COMPLAINT

crossdocking including 7 days storage.  The total statement amount was $14,365.00, which was consistent with Pasiphae's agreement with the SE Defendants

52.    On March 31, 2022, Pasiphae paid $14,365.00 to the SE Defendants via wire transfer, which satisfied the amount due on Invoice Nos. 2033, 2046, and 111.

53.    On April 1, 2022, the SE Defendants provided an Inventory List to Pasiphae confirming that 17,897 cases with ten (10) boxes per case for a total of 178,970 boxes of the Product had been received and was being stored in the Brickell Warehouse.  This amount is consistent with the amount reflected on the Bills of Lading.  A copy of the Inventory List is attached as **Exhibit "F."**

54.    After Pasiphae's Product arrived at the Brickell Warehouse, MRD was unable to effectuate the purchase.  As a result, Pasiphae continued to store the Product at the Brickell Warehouse at the agreed-upon monthly amount of $10,010.00 until a new purchaser could be secured.

55.    Sawaf offered to leverage his industry contacts to try to locate a new purchaser for Pasiphae.  Pasiphae was open to new purchasers who were willing and able to purchase the Product at their price point.

56.    Pasiphae also continued to work to secure a new purchaser and flew to California five times between April and July 2022 to complete inspections of the Product with inspectors for potential purchasers.  During each such trip, Pasiphae and/or the inspectors were permitted access to the Brickell Warehouse to inspect the Product.

57.    On April 12, 2022, SE Logistix issued Invoice No. 117 to Pasiphae for $10,010.00 for April 2022 storage.  This amount was consistent with the $35.00 per pallet for 286 pallets reflected in SE Logistix's Price List agreed to by Pasiphae.

58.    On May 2, 2022, SE Logistix issued Invoice No. 129 to Pasiphae for $10,010.00 for May 2022 storage.  This amount remained consistent with SE Logistix's Price List agreed to by Pasiphae.

VERIFIED COMPLAINT

59.     On May 18, 2022, Pasiphae paid Invoice No. 117 for $10,010.00 to the SE Defendants via wire transfer.

60.     On June 29 and 30, 2022, Pasiphae paid a total of $20,010.00 via wire transfer to the SE Defendants to satisfy Invoice No. 129 and in anticipation of an invoice for storage for June 2022 that had yet to be issued by the SE Defendants.

61.     In July 2022, Sawaf sent messages to Drada stating "The good news is that my parents agreed to buy 40k boxes to be used at their medical centers . . . $25.5 [sic] ready close the transaction .. [sic] I'll send you the invoices but you don't have to wire me the money.. [sic] you can keep it as a deposit."  Sawaf then asked for an invoice for the sale. A copy of this message is attached as **Exhibit "G."**

62.     At this time, Sawaf represented to Pasiphae that he had a deposit of $50,000.00.  Based upon the July text messages and other representations, Pasiphae was not obligated to pay rent for several months.

63.     As a result of the SE Defendants' request, on July 14, 2022, Pasiphae issued Invoice No. 2207141001 to SE Logistix for the purchase of the Product.

64.     Thereafter, Pasiphae followed up multiple times regarding the status of the purported sale, but it never came to fruition and no deposit was ever verified.

65.     On July 29, 2022, Sawaf claimed in messages that Pasiphae was three months behind in rent.  Drada responded:

> I don't understand, please let me know what I am missing.  Original payment covered till the end o[f] March, and I have sent you 3 payments so far, which was my understanding that covered everything till the end of June.  The first week of July is when we talked about payment for July, which I was able and ready to send, but you stated I did not need to, that I should consider it a down payment for the purchase of the 40k units which was supposed to be a certainty.  I can work on sourcing the payment for July and August that becomes due next week but I don't know which is the third month you are talking about… please let me know what I am missing, thanks!

VERIFIED COMPLAINT

A copy of this message is attached as **Exhibit "H."**

66. Pasiphae then requested, on multiple occasions, copies of the July and August invoices to facilitate payment. *See, e.g.,* **Exhibit "I."**

67. Pasiphae had already advanced payment for June 2022 without a valid invoice, but was unable to remit payment for additional months without the requested written invoices.

68. The SE Defendants failed to send invoices for July and August 2022 until October 2022 as detailed below and, to date, has never sent an invoice for June 2022.

69. On September 8, 2022, Drada flew to California for a scheduled inspection with a representative of a Pasiphae investor.

70. Immediately prior to and during the September 2022 trip, Sawaf informed Drada that the SE Defendants had moved the Product to a property located at 9881 6th Street, Suite 206, Rancho Cucamonga, California (the "6th St. Warehouse").

71. The relocation of the Product was completed by the SE Defendants without informing, consulting with, or receiving approval from Pasiphae.

72. Upon information and belief, the SE Defendants had been evicted from the Brickell Warehouse as a result of an eviction proceeding initiated against Sawaf's other company, Solaryna, in or about April 2022.

73. Upon information and belief, SE Logistix is the sublessee of the 6th St. Warehouse where Pasiphae's Product is currently stored.

74. Drada and the investor's representatives viewed the Product at the 6th St. Warehouse on September 8, 2022 and this was the last time Pasiphae was granted access to see the Product.

75. On September 29, 2022, Pasiphae requested that the SE Defendants send a Warehouse Proof of Life ("POL") Video to confirm that Pasiphae's Product was stored at the 6th St. Warehouse as required by two potential buyers, Bio

VERIFIED COMPLAINT

International Corporation and Momentus Estate Holdings LLC, who were scheduling upcoming trips to inspect the Product.

76.     Also on September 29, 2022, SE Logistix prepared and sent the POL video to Pasiphae via WhatsApp showing the 286 pallets of the Product in the 6th Street Warehouse.

77.     On October 3, 2022, the SE Defendants sent an email to Pasiphae attaching the three (3) months of purported outstanding invoices plus shipping costs (Invoice Nos. 171,172,173, 175 dated September 30, 2022).

78.     October 3, 2022, was the first time the SE Defendants had issued invoices for July and August 2022 storage despite Pasiphae's earlier requests for invoices to facilitate payment.

79.     Also in the October 3, 2022 email, the SE Defendants stated that if payment was not made the "account will go into collection and potential legal actions. Interst [sic] and late fees will be added if we don't receive a full payment immediately."

80.     Invoice Nos. 171, 172, and 173 were allegedly for storage for July through September 2022 in the amount of $18,590.00 per month and not the agreed upon $10,010.00 per month. This represented a unilateral increase from the agreed-upon amount of $35.00 per pallet to $65.00 per pallet.

81.     Pasiphae was not given advanced notice of this increase prior to receipt of these invoices nor did or could Pasiphae agreed to same.

82.     Invoice No. 175 was in the amount of $18,000.00 apparently charging Pasiphae for trucking services related to the SE Defendants' unilateral relocation of Pasiphae's Product from the Brickell Warehouse to the 6th St. Warehouse.

83.      Pasiphae was not given advanced notice of the relocation of its Product nor the alleged associated cost. Pasiphae did not and could not have agreed to same.

84.     On October 4, 2022, Drada spoke with Sawaf about these invoices and expressed that Pasiphae did not and would not agree to these rates or to the alleged

VERIFIED COMPLAINT

cost of the unilateral relocation of the Product.  Sawaf claimed that the eviction of the SE Defendants from the Brickell Warehouse was caused by Pasiphae's nonpayment of rent in July and August 2022[4] and that the $18,590.00 per month charge was his new nonnegotiable rate.  Pasiphae did not agree.

85.    Thereafter, Pasiphae made numerous attempts to make payment at the original contracted rate of $10,010.00 per month, but the SE Defendants refused to cooperate and accept same.

86.    Drada flew to California from October 21 through 28, 2022 to access the Product at the 6th Street Warehouse for inspection by potential purchasers.  An inspector for a prospective buyer accompanied Drada to California to complete one of the inspections.

87.    The SE Defendants were unresponsive to Pasiphae's access and inspection request(s) during the October 2022 trip and interfered with Pasiphae's access to the Product thereby preventing its inspection and thwarting Pasiphae's ability to sell the Product to this buyer.

88.    On October 27, 2022, Medavations advised Sawaf that Pasiphae had an inspector who wanted to access the Product at the 6th Street Warehouse.  Sawaf responded that no one would be there because he "shut down everything." Medavations continued to request access to the Product and Sawaf responded "We need $100k to be paid first."

89.    The SE Defendants were holding the Product hostage.

90.    In or about late October 2022, Pasiphae learned through industry contacts, including inspectors with whom Pasiphae had a relationship, that the SE Defendants were falsely claiming ownership of the Product, marketing it, and attempting to sell it for a fraction of the cost paid by Pasiphae thereby causing market confusion and deflating the value of the Product in the industry.

---

[4] This could not be true because, upon information and belief, the eviction process was filed against Solaryna in April 2022.  As such, the SE Defendants were already in danger of eviction when Pasiphae first contracted with them – a looming eviction that was never disclosed to Pasiphae.

91.    In or about the fall of 2022, Pasiphae also learned through industry contacts that the SE Defendants had fraudulently altered the Bills of Lading to remove Pasiphae's name so as to falsely represent that the SE Defendants were the owners of the Product.

92.    As soon as Pasiphae learned that the SE Defendants were trying to sell the Product, Pasiphae attempted to mitigate exposure to damages from the SE Defendants' improper attempts to sell the Product by notifying buyers and inspectors that Pasiphae was the true owner of theProduct.

93.    From November 8-13, 2022, Drada again flew to California to prepare for the inspection of the Product in anticipation of its upcoming sale to a potential purchaser.

94.    The SE Defendants ignored Drada's communications requesting access to the Product to facilitate the necessary inspection thereby preventing its inspection and thwarting Pasiphae's ability to sell the Product to yet another customer.

95.    On November 11, 2022, Drada specifically informed the SE Defendants that the inspector for a potential buyer had flown to California with Drada to inspect the Product.  Sawaf did not respond or grant access.

96.    On November 12, 2022, Pasiphae wrote to the SE Defendants detailing its attempts at communication, seeking access to the Product, and requesting resolution of the storage situation.  Pasiphae also alerted the SE Defendants that Pasiphae had become aware of the SE Defendants' attempts to falsely claim ownership of, market, and sell the Product and demanded that they stop.  A copy of the November 12, 2022 email is attached as **Exhibit "J."**

97.    On November 18, 2022, Pasiphae learned from industry contacts that the SE Defendants had actually issued an Invoice numbered 185 to Mark Depew ("Depew") in Wyoming seeking to sell Pasiphae's Product at a severely discounted rate without Pasiphae's knowledge or consent in the total amount of $3,847,425.00. A copy of the Invoice is attached as **Exhibit "K."**

98.    Upon information and belief, the SE Defendants' attempted sale to Depew did not move forward because the inspector hired by Depew to inspect the Product was aware of Pasiphae's true ownership and informed Depew accordingly.

99.    On November 29, 2022, Pasiphae, through counsel, sent a Cease and Desist Notice to the SE Defendants demanding that the SE Defendants immediately cease and desist from interfering with Pasiphae's ownership interest in the Product, representing in the marketplace that the SE Defendants had ownership of the Product, and engaging in any transactions related to the Product. A copy of the Cease and Desist Notice is attached as **Exhibit "L."**

100.    From December 1-15, 2022, Drada flew to California to again attempt to gain access to/relocate the Product and to resolve the hostage situation created by the SE Defendants.

101.    On December 1, 2022, Drada messaged Sawaf via WhatsApp and later met with Sawaf at a Starbucks in California.

102.    At that meeting, Sawaf demanded $1,000,000.00 in cash if Pasiphae ever wanted to see its Product again and stated that the Product was his and he would sell it, take what he thought was appropriate, and give anything left over to Pasiphae.

103.    During the December 1, 2022 meeting, Sawaf claimed he had not received the Cease and Desist Notice.  As such, Drada forwarded the Cease and Desist Notice directly to Sawaf's email while the two were sitting together.  A copy of this email is attached as **Exhibit "M."**

104.    On December 2, 2022, Pasiphae learned from another party storing items at the 6th Street Warehouse that the SE Defendants were attempting to use the Product as collateral to purchase a cannabis processing plant.  Upon information and belief this attempt to improperly leverage the Product was again thwarted by the inspector who advised the seller that the Product actually belonged to Pasiphae and not the SE Defendants.

VERIFIED COMPLAINT

105.   Following the disturbing December 1, 2022 meeting, Pasiphae undertook an investigation to determine who owned and rented the 6th Street Warehouse to apprise them of the theft being perpetrated by the SE Defendants and to try to gain access to the Product to ensure that the SE Defendants would not wrongfully sell the Product.

106.   Pasiphae learned through third parties and record searches that the 6th Street Warehouse was owned by Delmar and leased to Ghazi.

107.   On December 6, 2022, Drada went to Delmar's California offices to provide them notice that stolen property was being held at the 6th Street Warehouse by the SE Defendants and to determine if Delmar would permit Pasiphae access.

108.   During this meeting, Delmar was initially hostile to Drada because Delmar advised that they had received visits from other parties also claiming to be the rightful owner of Pasiphae's property being withheld by the SE Defendants.  As such, Delmar was on notice of the SE Defendants holding Pasiphae's property hostage.

109.   Drada furnished Delmar with documentation proving that Pasiphae was the true owner of the Product, including the Bills of Lading, the commercial invoice from the distributor, and the Cease and Desist Notice.

110.   Delmar declined to provide any assistance to Pasiphae and directed Pasiphae to Ghazi and the SE Defendants.

111.   On December 6, 2022, Pasiphae, through counsel, forwarded a copy of the Cease and Desist Notice to Delmar.

112.   On December 6, 2022, Sawaf sent a message to Drada claiming harassment and demanding Drada stay away from the 6th Street Warehouse where the Product is stored.  Sawaf even claimed to have filed out a restraining order, although Drada was never served with anything in this regard.  Sawaf stated "Don't ever show up in my place."

VERIFIED COMPLAINT

113.    Thus, the SE Defendants made clear that Pasiphae was completely foreclosed from accessing its own Product under threats of restraining orders.

114.    On December 9, 2022, Pasiphae sent a copy of the Cease and Desist Notice along with a correspondence to Ashkar detailing the SE Defendants' wrongful actions and seeking access directly from Ashkar to the 6th Street Warehouse to gain access to the Product.

115.    The same day, via text message, Pasiphae requested a phone call to discuss the matter, but Ashkar refused to assist and directed Pasiphae to the SE Defendants.

116.    On December 13, 2022, having been declined assistance from either Delmar or Ashkar and with the SE Defendants continuing to hold the Product hostage, Pasiphae communicated to the SE Defendants that the SE Defendants' demand for $1,000,000.00 was unacceptable and that, if the matter was not resolved, Pasiphae would lose another potential buyer.

117.    On December 22, 2022, Pasiphae, through counsel, resent the Cease and Desist Notice to all Defendants with an additional email communication regarding the Defendants failure to respond and refusal to provide Pasiphae access to the Product for purposes of inspection to facilitate sale thereof.  Pasiphae advised Defendants that legal action would be taken if Defendants failed to respond.  A copy of this email is attached as **Exhibit "N."**

118.    In December 2022, Pasiphae filed police reports documenting the theft of the Product by the SE Defendants.

119.    In or about January 2023, Pasiphae learned that the SE Defendants had improperly sold 17,000+ boxes of the Product to Karen W. Sohar ("Sohar") at a rate of $16.00 - $17.00 per box for a total of approximately $300,000.00.

120.    Upon information and belief, Sohar paid the SE Defendants this amount of the Product before learning that Pasiphae was the true owner.

121.   Upon information and belief, Sohar attempted to cancel the order and receive its money back; however, the SE Defendants advised that the sale was "non-refundable."

122.   On January 9, 2023, Sohar advised Pasiphae that it would have to move forward with receipt and sale of the 17,000+ boxes of the Product for which she had already remitted payment and that any dispute about the Product was between Pasiphae and the SE Defendants.

123.   On January 17, 2023, Pasiphae learned through industry contacts that the Product is still being held at the 6th Street Warehouse and that the SE Defendants are offering the Product for sale at rates between $12.00 and $18.00 per box, which is well below market value and the amount paid by Pasiphae.

124.   On January 19, 2023, Pasiphae learned from AM Global that the SE Defendants contacted AM Global requesting a validation of lot numbers of the Product.  AM Global declined to provide such information knowing that the product was sold to and still owned by Pasiphae and not the SE Defendants.

125.   On or about January 31, 2023, Pasiphae learned through industry contacts that the Defendants had arranged for the sale of 179,000 Product at the below market value sale price of $14 per box.

126.   On February 1, 2023, the buyer of the above attempted sale is believed to have stopped payment on the transaction due to discovering that SE Defendants neither owned nor had the right to sell the Product.

127.   Upon information and belief, the SE Defendants are also utilizing third parties to try to sell the Product for the SE Defendants.

128.   As of the date of this filing, the Defendants have failed to adequately, if at all, respond to the Cease and Desist Notice.  Defendants continue to withhold access to the Product and the SE Defendants are believed to be actively attempting to sell off Pasiphae's Product.

VERIFIED COMPLAINT

1

## **FIRST CLAIM FOR CLAIM AND DELIVERY**

2

### (Against All Defendants)

3    129.   Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and
4    every allegation contained in the above paragraphs of the Complaint as though fully
5    set forth at length herein.

6    130.   Pasiphae owned and continues to own the Product.

7    131.   The SE Defendants substantially interfered with Pasiphae's property by
8    knowingly and intentionally taking possession of the Product through the SE
9    Defendants' relocation, marketing, or selling/encumbering (including related
10   attempts) of the Product and making representations of ownership over the Product.

11   132.   All Defendants substantially interfered with Pasiphae's property
12   preventing Pasiphae from having access to the Product.

13   133.   Pasiphae did not consent to the Defendants' actions.

14   134.   Pasiphae was and continues to be harmed by the Defendants' actions.

15   135.   Defendants' conduct was and continues to be a substantial factor in
16   causing Pasiphae's harm.

17   136.   The SE Defendants have actual possession of Pasiphae's property, the
18   Product, as it is currently stored at the 6th Street Warehouse.

19   137.   Defendants Delmar and Ashkar have actual possession of Pasiphae's
20   property, the Product as they are the landlord and lessee of the 6th Street Warehouse
21   subleased to the SE Defendants.

22   138.   Pasiphae demanded the return of the Product as detailed above in
23   November 2021 and via the Cease and Desist Notice sent in November and
24   December 2021.

25   139.   Defendants have refused to deliver the Product to Pasiphae or permit
26   Pasiphae access to the Product to enable Pasiphae to remove it.

27   **WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against all
28   Defendants on the First Claim as follows:

VERIFIED COMPLAINT

A.    Directing Defendants to immediately deliver the Product to Pasiphae. In the event Defendants refuse to immediately deliver the Product to Pasiphae, that the Court direct the Sheriff of San Bernardino county, or any County where the Product may be found, to seize the Product and deliver it to Pasiphae;

B.    For nominal damages, compensatory damages, incidental damages, and consequential and/or special damages, according to proof;

C.    Pre- and post-judgment interest;

D.    For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

E.    As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff Pasiphae seeks punitive damages according to proof;

F.    Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

G.    Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

### SECOND CLAIM FOR BREACH OF CONTRACT

#### (Against SE Defendants)

140.    Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

141.    Pasiphae and the SE Defendants entered into a bailment contract, through communications ratified by conduct, for the storage of the Product at the Brickell Warehouse at a rate of $35 per pallet per month for a total of $10,010.00 per

month (the "agreed upon rate"), with the understanding that Pasiphae would require access to the Product for purposes of inspection to facilitate sale.

142.   Pasiphae did all, or substantially all, of the significant things that the contract required it to do.

143.   Pasiphae was excused from performance by virtue of the SE Defendants' advising in July 2022 that storage payment was not required and failing to remit timely invoices followed by the SE Defendants actions in unilaterally relocating the Product, charging for such relocation, and increasing the agreed-upon monthly rate as well as the SE Defendants' refusing Pasiphae's access to the Product, marketing the Product as their own, and selling or attempting to sell and/or encumber some or all of the Product.

144.   The SE Defendants breached the contract by unilaterally relocating the Product, purporting to charge for such relocation, unilaterally increasing the storage cost, denying Pasiphae access to the Product, and wrongfully commandeering and attempting to or actually selling and/or encumbering some or all of the Product.

145.   Pasiphae was and continues to be harmed by the SE Defendants' breaches.

146.   The SE Defendants' breaches were and continue to be a substantial factor in causing Pasiphae's harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Second Claim as follows:

H.   For nominal damages, compensatory damages, incidental damages, and consequential and/or special damages, according to proof;

I.   Pre- and post-judgment interest;

J.   For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

VERIFIED COMPLAINT

K.   As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff Pasiphae seeks punitive damages according to proof;

L.   Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

M.   Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

## THIRD CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against SE Defendants)

147.   Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

148.   In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation.

149.   Pasiphae and the SE Defendants entered into a contract for the storage the Product at the Brickell Warehouse at a rate of $35 per pallet per month for a total of $10,010.00 per month understanding that Pasiphae would require access to the Product for purposes of inspection to facilitate sale.

150.   The SE Defendants in unilaterally relocating the Product and charging for same, unilaterally increasing the storage cost, denying Pasiphae access to the Product, and wrongfully commandeering and attempting to or actually selling and/or encumbering some or all of the Product deprived Pasiphae of the benefits under the contract.

151.  By doing so, the SE Defendants did not act fairly and in good faith.

152.  Pasiphae was and continues to be harmed by the SE Defendants' conduct.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Third Claim as follows:

A.    For nominal damages, general damages, special damages, economic damages, liquidated damages, according to proof;

B.    Pre- and post-judgment interest;

C.    For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

D.    As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.    Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.    Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

## FOURTH CLAIM FOR CONVERSION

(Against All Defendants)

153.  Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

154.  Pasiphae owned and continues to own the Product.

155.  The SE Defendants substantially interfered with Pasiphae's property by knowingly and intentionally taking possession of the Product through the SE

23

1   Defendants' relocation, marketing, or selling/encumbering (including related

2   attempts) of the Product and making representations of ownership over the Product.

3          156.   All Defendants substantially interfered with Pasiphae's property

4   preventing Pasiphae from having access to the Product.

5          157.   Pasiphae did not consent to the Defendants' actions.

6          158.   Pasiphae was and continues to be harmed by the Defendants' actions.

7          159.   Defendants' conduct was and continues to be a substantial factor in

8   causing Pasiphae's harm.

9          **WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against all

10  Defendants on the Fourth Claim as follows:

11         A.     For fair market value of the Products, according to proof;

12         B.     Special damages and compensatory damages;

13         C.     Pre- and post-judgment interest;

14         D.     For replevin of the Property allowing Pasiphae immediate possession

15                thereof together with incidental damages;

16         E.     For temporary, preliminary and permanent injunctive relief enjoining

17                the SE Defendants from relocating, marketing, or selling the Product or

18                in making any representations concerning ownership of the Product and

19                enjoining all Defendants from interfering with Pasiphae's ability to

20                access and sell the Product;

21         F.     As the above-referenced conduct of Defendants was malicious,

22                fraudulent, and oppressive, Plaintiff seeks punitive damages according

23                to proof;

24         G.     Awarding reasonable attorneys' fees, expenses, and costs incurred in

25                bringing this action;

26         H.     For costs of suit; and

27         I.     Awarding such other and further relief as is deemed equitable,

28                appropriate, and just by this Court.

VERIFIED COMPLAINT

## FIFTH CLAIM FOR INTENTIONAL MISREPRESENTATION

(Against SE Defendants)

160.  Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

161.  The SE Defendants represented to Pasiphae that they would store the Product for Pasiphae at the agreed upon rate at the Brickell Warehouse and permit Pasiphae to have access to the Product to facilitate inspections and sale thereof.

162.  The SE Defendants' representation was false as they actually relocated the Product to a location other than the Brickell Warehouse, unilaterally raised the agreed upon rate, denied Pasiphae access to the Product, commandeered the Product, marketed it as their own, falsely represented to the industry that they are and were the owners of the Product, attempted to encumber the Product, and actually sold some of the Product to a third party without Pasiphae' knowledge or consent.

163.  The SE Defendants knew that the representation was false when they made it or that they made it recklessly and without regard for its truth.

164.  The SE Defendants intended that Pasiphae rely on their representation in securing the Product.

165.  Pasiphae reasonably relied on the SE Defendants' representation(s).

166.  Pasiphae was and continues to be harmed.

167.  Pasiphae's reliance on the SE Defendants' representation(s) was and continues to be a substantial factor in causing its harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Fifth Claim as follows:

A.    For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.    Pre- and post-judgment interest;

C.     For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

D.     As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.     Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.     Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

## SIXTH CLAIM FOR NEGLIGENT MISREPRESENTATION

### (Against SE Defendants)

168.   Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

169.   The SE Defendants represented to Pasiphae that they would store the Product for Pasiphae at the agreed upon rate at the Brickell Warehouse and permit Pasiphae to have access to the Product to facilitate inspections and sale thereof.

170.   The SE Defendants' representation was false as they actually relocated the Product to a location other than the Brickell Warehouse, unilaterally raised the agreed upon rate, denied Pasiphae access to the Product, commandeered the Product, marketed it as their own, falsely represented to the industry that they are and were the owners of the Product, attempted to encumber the Product, falsified documents to make it appear as if they were the owners, attempted to encumber the Product, and actually sold some of the Product to a third party without Pasiphae' knowledge or consent.

VERIFIED COMPLAINT

171.  Although the SE Defendants may have honestly believed that their representation was true, i.e., that they could sell the Product, the SE Defendants had no reasonable grounds for believing the representation was true when they made it.

172.  The SE Defendants intended that Pasiphae rely on their representation in securing the Product.

173.  Pasiphae reasonably relied on the SE Defendants' representation.

174.  Pasiphae was and continues to be harmed.

175.  Pasiphae's reliance on the SE Defendants' representation was and continues to be a substantial factor in causing its harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Sixth Claim as follows:

A.  For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.  Pre- and post-judgment interest;

C.  For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

D.  As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.  Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.  Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

VERIFIED COMPLAINT

## <u>SEVENTH CLAIM FOR CONCEALMENT</u>

(Against SE Defendants)

176.   Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

177.   The SE Defendants disclosed some facts to Pasiphae, but intentionally failed to disclose other facts, making the disclosure deceptive and/or the SE Defendants intentionally failed to disclose certain facts that were known only to them and that Pasiphae could not have discovered and/or the SE Defendants prevented Pasiphae from discovering certain facts.

178.   Pasiphae did not know of the concealed facts.

179.   The SE Defendants intended to deceive Pasiphae by concealing the fact(s).

180.   Had the omitted information been disclosed, Pasiphae would have behaved differently.

181.   Pasiphae was and continues to be harmed.

182.   The SE Defendants concealment was and continues to be a substantial factor in causing Pasiphae's harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Seventh Claim as follows:

A.    For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.    Pre- and post-judgment interest;

C.    For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

VERIFIED COMPLAINT

D.    As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.    Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.    Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

## EIGHTH CLAIM FOR FALSE PROMISE

(Against SE Defendants)

183.    Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

184.    The SE Defendants made a promise to Pasiphae to store the Product for Pasiphae at the agreed upon rate at the Brickell Warehouse and permit Pasiphae to have access to the Product to facilitate inspections and sale thereof.

185.    The SE Defendants did not intend to perform such promise(s) when they made it.

186.    The SE Defendants intended that Pasiphae rely on such promise(s).

187.    Pasiphae reasonably relied on such promise(s) by the SE Defendants.

188.    The SE Defendants did not perform the promised act(s).

189.    Pasiphae was and continues to be harmed.

190.    Pasiphae's reliance on the SE Defendants' promise(s) was and continues to be a substantial factor in causing its harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Eighth Claim as follows:

A.    For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.    Pre- and post-judgment interest;

VERIFIED COMPLAINT

C.   For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

D.   As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.   Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.   Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

## NINTH FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

### (Against All Defendants)

191.   Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

192.   Pasiphae and multiple buyers for the Product – including, but not limited to, Bio International Corporation and Momentus Estate Holdings LLC – were in an economic relationship that probably would have resulted in an economic benefit to Pasiphae.

193.   Defendants knew of the relationship(s).

194.   All Defendants engaged in wrongful conduct in preventing Pasiphae from having access to the Product.

195.   The SE Defendants engaged in additional wrongful conduct in relocating, marketing, or selling of the Product and making representations of ownership over the Product.

VERIFIED COMPLAINT

196. By engaging in this conduct, Defendants intended to disrupt the relationship(s) or knew that disruption of the relationship(s) was certain or substantially certain to occur.

197. The relationship(s) was disrupted.

198. Pasiphae was and continues to be harmed.

199. The Defendants' wrongful conduct was and continues to be a substantial factor in causing Pasiphae's harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against all Defendants on the Ninth Claim as follows:

A.  For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.  Pre- and post-judgment interest;

C.  For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product and enjoining all Defendants from interfering with Pasiphae's ability to access and sell the Product;

D.  As the above-referenced conduct of the Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.  Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.  Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

VERIFIED COMPLAINT

## TENTH CLAIM FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

(Against All Defendants)

200. Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

201. Pasiphae and multiple buyers for the Product – including, but not limited to, Bio International Corporation and Momentus Estate Holdings LLC – were in an economic relationship that probably would have resulted in an economic benefit to Pasiphae.

202. Defendants knew or should have known of the relationship(s).

203. Defendants knew or should have known that the relationship(s) would be disrupted if they failed to act with reasonable care.

204. Defendants failed to act with reasonable care.

205. All Defendants engaged in wrongful conduct in preventing Pasiphae from having access to the Product.

206. The SE Defendants engaged in additional wrongful conduct in relocating, marketing, or selling of the Product and making representations of ownership over the Product.

207. The relationship(s) was disrupted.

208. Pasiphae was and continues to be harmed.

209. The Defendants' wrongful conduct was and continues to be a substantial factor in causing Pasiphae's harm.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against all Defendants on the tenth Claim as follows:

A.    For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.    Pre- and post-judgment interest;

32

C.  For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product and enjoining all Defendants from interfering with Pasiphae's ability to access and sell the Product;

D.  As the above-referenced conduct of the Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.  Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.  Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

## ELEVENTH CLAIM FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (UCL) (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)

### (Against SE Defendants)

210.  Plaintiff Pasiphae hereby repeats, realleges, and incorporates each and every allegation contained in the above paragraphs of the Complaint as though fully set forth at length herein.

211.  The SE Defendants engaged in unlawful, unfair, and/or fraudulent business acts or practices as well as unfair, deceptive, untrue, and/or misleading advertising – in violation of the False Advertising Law (FAL) (Cal. Bus. & Prof. Code §§ 17500 *et. seq.*) – in marketing the Product as their own, falsely representing to the industry that they were and are the owners of the Product, attempting to encumber the Product, falsifying documents to make it appear as if they were the owners, and actually selling some of the Product to a third party without Pasiphae' knowledge or consent.

212.  Pasiphae was and continues to be actually injured as a result of the SE Defendants' actions.

**WHEREFORE**, Plaintiff Pasiphae respectfully requests Judgment against the SE Defendants on the Eleventh Claim as follows:

A.  For nominal damages, compensatory damages, consequential and incidental damages, and actual damages, according to proof;

B.  Pre- and post-judgment interest;

C.  For temporary, preliminary and permanent injunctive relief enjoining the SE Defendants from relocating, marketing, or selling the Product or in making any representations concerning ownership of the Product or interfering with Pasiphae's ability to access and sell the Product;

D.  As the above-referenced conduct of the SE Defendants was malicious, fraudulent, and oppressive, Plaintiff seeks punitive damages according to proof;

E.  Awarding reasonable attorneys' fees, expenses, and costs incurred in bringing this action; and

F.  Awarding such other and further relief as is deemed equitable, appropriate, and just by this Court.

Respectfully Submitted,

GREENSPOON MARDER, LLP

Dated:  February 3, 2023          By: */s/Brian Koegle*  _____
                                       Brian Koegle
                                       Kelly M. Purcaro
                                       Kory Ann Ferro
                                       Attorneys for Plaintiff
                                       PASIPHAE HOLDINGS, INC.

VERIFIED COMPLAINT

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands trial by jury.

Respectfully Submitted,

GREENSPOON MARDER, LLP

Dated:   February 3, 2023                    By: */s/Brian Koegel*
                                             Brian Koegle
                                             Kelly M. Purcaro
                                             Kory Ann Ferro
                                             Attorneys for Plaintiff
                                             PASIPHAE HOLDINGS, INC.

VERIFIED COMPLAINT

*Pasiphae Holdings, Inc. v. SE Logistix Corp., et al.*
United States District Court, Central District Case No. _____

## **VERIFICATION**

I, Federico Drada, certify as follows:

1.    I am Director and President of PASIPHAE HOLDINGS, INC., the Plaintiff in this action.

2.    I have read the foregoing VERIFIED CIVIL COMPLAINT in the above-entitled action and know the contents thereof, and the same is true to the best of my own knowledge and belief.

3.    I declare under penalty of perjury  that the foregoing is true and correct. Executed on February 2, 2023.

_____
Federico Drada
Pasiphae Holdings, Inc.
Director and President

VERIFIED COMPLAINT