**Eric A. Forstrom (SBN 237695)**
**FORSTROM LAW**
**412 Olive Avenue, Suite 512**
**Huntington Beach, CA 92648**
**Tel: (310) 562-8308**
**Email: eforstrom@forstromlaw.com**

**Attorneys for Defendants and Counterclaimants,**
**SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| PASIPHAE HOLDINGS, INC. a Florida Corporation,<br><br>            Plaintiff,<br><br>        vs.<br><br>SE LOGISTIX, CORP. a California Corporation; FRANK SAWAF a/k/a FAISAL M. ALSAWAF; DELMAR COMMERCIAL REAL ESTATE SERVICES, a California Corporation; GHAZI ASHKAR; JOHN DOES 1 -10; and ABC CORPS. 1-10,<br><br>            Defendants.<br><br>_____<br><br>AND COUNTERCLAIMS. | **Case No.: 5:23-cv-186-SSS-SHKx**<br>**Assigned to the Hon. Sunshine Suzanne Sykes**<br><br>**DEFENDANTS AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ERIC A. FORSTROM**<br><br>**Hearing:**<br>**Date:        March 21, 2025**<br>**Time:        2:00 p.m.**<br>**Dept.:       Courtroom 2**<br>**Location:  3470 Twelfth Street**<br>**                   Riverside, CA 92501**<br><br>[*Declaration of Frank Sawaf and Proposed Order Filed Concurrently Herewith*] |

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

**TO THE COURT, ALL PARTIES HEREIN, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 21, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court, located at 3470 Twelfth Street, Riverside, California 92501, Defendants and Counterclaimants SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF (hereinafter collectively, the "SE Counterclaimants") will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure, Rule 55, for entry of default judgment against Plaintiff Pasiphae Holdings, Inc. (hereinafter, "Plaintiff" or "Pasiphae").

This Motion is based upon the notice served on all parties, upon the Memorandum of Points and Authorities contained herein, the Declaration of Eric A. Forstrom, the Declaration of Frank Sawaf, upon the records and files of the Court in this action, and upon such further evidence and argument as may be presented prior to or at the time of the hearing on the Motion.

Dated:  February 10, 2025          **FORSTROM LAW**

By:/s/ ERIC A. FORSTROM
        ERIC A. FORSTROM
        **Attorneys for Defendants and Counterclaimants, SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This matter arises from an alleged breach of an agreement to provide logistic, marketing, and sales services with respect to 178,970 boxes of Cranberry Evolve 300 CT Nitrile Powder-Free Examination Gloves (hereinafter, "the Product") at SE Logistix's facilities in California.  Plaintiff Pasiphae Holdings, Inc. (hereinafter, "Pasiphae") is a Florida Corporation and is a supplier of PPE products, including but not limited to, COVID-19 testing kits and medical gloves.

On March 4, 2022 (and per its own admission), Pasiphae purchased the Product "at a rate of $27.50 per box for a total purchase price of $4,927,725.00 directly from the Product's distributor, AM Global Supply, Inc. (hereinafter, "AM Global")."  Based on information and belief, Pasiphae (via its principal officer and Counterclaim Defendant, Frederico Drada (hereinafter, "Mr. Drada")) obtained a private loan from a venture capitalist named "Court Coursey" in order to pay for/purchase the Product.  *See* Declaration of Frank Sawaf (hereinafter, "Sawaf Declaration"), ¶2.

Soon thereafter, Pasiphae (by way of another company, Medavations, Inc.) contacted Sawaf and inquired whether SE Logistix could provide **logistic, marketing, and sales services** for the Product.  Approximately two weeks later, the SE Counterclaimants provided a written quote to Medavations regarding the cost to provide such services.  *See* Declaration of Frank Sawaf (hereinafter, "Sawaf Declaration"), ¶3.  Sawaf also met with Mr. Drada to discuss the proposed deal/agreement.  Following their conversation, the parties agreed that the SE Counterclaimants would provide the requested services to Pasiphae.  *See* Id.  On or around March 16, 2022, the parties memorialized their agreement (hereinafter, "the Agreement") via emails and the aforementioned "Price List"/quote provided by SE Logistix/Sawaf.  In short, the SE Counterclaimants agreed to provide logistic,

marketing, and sales services in exchange for payments per the agreed-upon Price List/quote. *See* Sawaf Decl., ¶4. Per the Price List, Pasiphae agreed to pay SE Logistix $35 per pallet per month. It further provides that the price per pallet increases $10/month. Finally, the List expressly states that "if any invoice is older than 45 days, all merchandise will be on hold until invoices are paid up-to-date." *See* Sawaf Decl., ¶5; *see also* Plaintiff's Complaint, Exhibit "B." Pasipahe also repeatedly advised Sawaf (via email, telephone, and text communications) that it would pay the SE Counterclaimants a percentage of the profit ultimately derived from the sale of the Product. *See* Sawaf Decl., ¶6.

Despite the scheduled monthly increase, SE Logistix only charged Pasiphae $35/pallet for the months of April, May, and June 2022 (rather than $35 in April, $45 in May, and $55 in June, as allowed by the Agreement). In July 2022, however, SE Logistix charged Pasiphae $65/pallet (which reflects the scheduled increase of $10/month) because Pasiphae was already behind in payment. Indeed, Pasiphae's failure to pay contributed to SE Logistix's eviction from the Brickell warehouse (where the Product was initially stored). **Pasiphae never objected to the $65/pallet fee.** *See* Sawaf Decl., ¶7.

SE Logistix kept the price of $65/pallet for July, August, and September 2022. In October 2022, SE Logistix invoiced Pasiphae for $75/pallet (despite having the right to charge $95, per the agreed-upon terms). From November 2022 to March 2023, SE Logistix invoiced Pasiphae the additional $10/month, as expressly set forth in the agreed-upon Price List. *See* Sawaf Decl., ¶8.

**During the relevant time period, Pasiphae (via Medavations) also executed an "Authorized Agent Agreement" expressly authorizing the SE Counterclaimants to "represent, promote, and sell Medavations' or its Affiliates products" -- including the PPE gloves that are the subject of this litigation.** *See* Sawaf Decl., ¶9. In short, the SE Counterclaimants provided much

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.

4

more than merely "a place to store the product."

Over the course of the following year, the SE Counterclaimants fully performed their obligations under the Agreement. Despite such performance, Pasiphae woefully failed to satisfy its own obligations. Indeed, Pasiphae still owes the SE Counterclaimants approximately $450,000 for just logistical services (which does not include any "profit sharing" that Pasiphae promised). *See* Sawaf Decl., ¶10. As a result of Pasiphae's failure to pay, the SE Counterclaimants also suffered an eviction from one of their warehouse locations, damage to their business reputation and relationships, and incurred substantial attorneys' fees in connection with the instant litigation. *See* Sawaf Decl., ¶11.

## II.    LEGAL ARGUMENT

### A.    Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Violation of *Business and Professions Code* §17200.

To state a cause of action for breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff. *See* Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1388 (1990). The implied covenant of good faith and fair dealing is inherent in every contract in California. *See* Id.

"'Unlawful business activity' proscribed under [Section 17200] includes 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *See* Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377, 383 (1992) (internal quotations and citations omitted). Courts have concluded that a business activity is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See* Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350,

1364-65 (2010) (internal quotations and citations omitted). Finally, to establish an unfair competition claim under the fraudulent prong, "plaintiffs must show that these representations were false or were likely to have misled 'reasonable consumers.'" *See* <u>Belton v. Comcast Cable Holdings, LLC</u>, 151 Cal.App.4th 1224, 1241 (2007).

Here, and as noted above, the SE Counterclaimants provide logistic services throughout the State of California. Sawaf is the principal of SE Logistix. In March 2022, Pasiphae (by way of Medavations, Inc.) contacted Sawaf and inquired whether SE Logistix could provide logistic, marketing, and sales services for the Product. Approximately two weeks later, the SE Counterclaimants provided a written quote to Medavations regarding the cost to provide such services. *See* Sawaf Decl., ¶3.

Sawaf also met with Drada to discuss the proposed deal/agreement. Following their conversation, the parties agreed that the SE Counterclaimants would provide the requested services to Pasiphae. *See* <u>Id</u>. On or around March 16, 2022, the parties executed the Agreement and Price List/quote provided by the SE Counterclaimants. In short, the SE Counterclaimants agreed to provide logistic, marketing, and sales services in exchange for payments per the agreed-upon Price List/quote.

Per the Price List, Pasiphae agreed to pay SE Logistix $35 per pallet per month. It further provides that the price per pallet increases $10/month. **Finally, the List expressly states that "if any invoice is older than 45 days, all merchandise will be on hold until invoices are paid up-to-date."** *See* Sawaf Decl., ¶5; *see also* Plaintiff's Complaint, Exhibit "B." Pasipahe also repeatedly advised Sawaf (via email, telephone, and text communications) that it would pay the SE Counterclaimants a percentage of the profit ultimately derived from the sale of the Product. *See* Sawaf Decl., ¶6.

Despite the scheduled monthly increase, SE Logistix only charged Pasiphae $35/pallet for the months of April, May, and June 2022 (rather than $35 in April, $45 in May, and $55 in June, as allowed by the Agreement).  In July 2022, however, SE Logistix charged Pasiphae $65/pallet (which reflects the scheduled increase of $10/month) because Pasiphae was already behind in payment.  Indeed, Pasiphae's failure to pay contributed to SE Logistix's eviction from the Brickell warehouse (where the Product was initially stored).  **Pasiphae never objected to the $65/pallet fee.**  *See* Sawaf Decl., ¶7.

SE Logistix kept the price of $65/pallet for July, August, and September 2022.  In October 2022, SE Logistix invoiced Pasiphae for $75/pallet (despite having the right to charge $95, per the agreed-upon terms).  From November 2022 to March 2023, SE Logistix invoiced Pasiphae the additional $10/month, as expressly set forth in the agreed-upon Price List.  *See* Sawaf Decl., ¶8.

**During the relevant time period, Pasiphae (via Medavations) also executed an "Authorized Agent Agreement" expressly authorizing the SE Counterclaimants to "represent, promote, and sell Medavations' or its Affiliates products" -- including the PPE gloves that are the subject of this litigation.**  *See* Sawaf Decl., ¶9, Exhibit "A" attached thereto.  In short, the SE Counterclaimants provided much more than merely "a place to store the product."

Over the course of the following year, the SE Counterclaimants fully performed, or substantially performed, all obligations per the Agreement. Pasiphae, however, breached the Agreement by failing to pay the SE Counterclaimants the agreed-upon price -- despite repeated requests for payment (from April 2022 to early 2023).  Indeed, Pasiphae still owes the SE Counterclaimants approximately $450,000 (excluding late fees, penalties, and interest) for storage and logistic services rendered.  The SE Counterclaimants never excused Counterclaim Defendants' non-performance.  To the contrary, they

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

continued to invoice Pasiphae for services rendered. *See* Sawaf Decl., ¶10.

Counterclaimants have suffered substantial monetary damages as a direct and proximate result of Counterclaim Defendants' unlawful conduct. Counterclaimants not only failed to receive the benefit(s) of the bargain, but have suffered eviction(s) and significant injury to their business reputation. *See* Sawaf Decl., ¶11.

Further, Pasiphae's unfair, unlawful, and fraudulent conduct was a substantial factor in causing the SE Counterclaimants' injuries. Indeed, the SE Counterclaimants have: (1) been unable to enjoy the benefits of its original bargain with Pasiphae; (2) were evicted from the Brickell Street warehouse; (3) never received assistance with the expenses incurred a result of such eviction; (4) suffered damage to their existing and potential economic relationships; and (5) suffered injury to their business reputation. Finally, Pasiphae's misconduct conduct forced the SE Counterclaimants to incur attorneys' fees in conjunction with the instant litigation (and the prosecution of their own countersuit). *See* Sawaf Decl., ¶12. The SE Counterclaimants believe Pasiphae's violation of Section 17200 was a substantial factor in causing them to incur approximately $300,000 in damages. *See* Id.

## B. <u>Intentional Interference with Economic Relations/Advantage.</u>

There are five elements to an action for intentional interference with prospective economic advantage/relations: (1) the existence, between plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action. *See* <u>Roy Allen Slurry Seal, Inc. v. American Ashpalt South, Inc.</u>, 2 Cal.5th 505, 512 (2017).

In the instant scenario, the SE Counterclaimants were in an economic relationship with the landlord (hereinafter, "Serena Lu") of a warehouse they used to store the Product, located at 4205 East Brickell Street, Ontario, California (i.e. the "Brickell Warehouse"). *See* Sawaf Decl., ¶13. The SE Counterclaimants were also in an economic relationship with the landlord (hereinafter, "Ghazi Ashkar") of another warehouse they used, located at 9881 6th Street, Rancho Cucamonga, 91730 (i.e. the "6th Street Warehouse"). *See* Id. As a logistic servicer provider, the SE Counterclaimants' business relies heavily on the ability to safely store various clients and customers' products. Thus, the SE Counterclaimants' relationship with both Ms. Lu and Mr. Ashkar provided economic benefit to Counterclaimants and would continue to do so (absent interference). *See* Sawaf Decl., ¶14. It is also noteworthy that storing the Product was unique, to wit: it required 10,000 square feet of storage space designed to safely store medical equipment. *See* Id.

Pasiphae knew of the SE Counterclaimants' relationship with both Ms. Lu and Mr. Ashkar. The SE Counterclaimants repeatedly informed Pasiphae they needed to be paid for services rendered (and that a portion of the monies would be used by the SE Counterclaimants to pay rent at the respective warehouse locations). Notwithstanding, Pasiphae failed and refused to pay. In short, Pasiphae intended to disrupt (and did disrupt) the SE Counterclaimants' economic relationships with Ms. Lu and Mr. Ashkar. *See* Sawaf Decl., ¶15. Indeed, the SE Counterclaimants were evicted from the Brickell Street warehouse. *See* Sawaf Decl., ¶16.

Pasiphae's unlawful and malicious conduct was a substantial factor in causing the SE Counterclaimants' injuries. Not only did they suffer eviction, but they continued to have ongoing obligations under the lease for the 6th Street warehouse. The SE Counterclaimants also suffered damages in the form of lost business and profit(s), emotional distress, injury to their business reputation, and

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST PASIPHAE HOLDINGS, INC.**

attorneys' fees.  **For example, the SE Counterclaimants' financial situation got so bad that Sawaf, as principal, was forced to sell his own personal property to help "make ends meet."  Unfortunately, it was never enough, as Sawaf frequently needed to choose between paying his warehouse landlords to store the Product or pay for his own family expenses (including but not limited to, paying his own rent, paying credit card bills, and paying his daughter's tuition).  Almost universally, Sawaf chose to pay his warehouse landlords based on the unyielding hope that Pasiphae would ultimately pay him the fees due and owing (and/or a share in the profits).  Unfortunately, <u>Pasiphae never did</u>.  As a result, Sawaf's personal credit was destroyed.  The SE Counterclaimants conservatively estimate such damages to be $1,000,000.**  *See* Sawaf Decl., ¶17.

Pasiphae's misconduct also severely damaged the SE Counterclaimants' business reputation (after years of earning a reputation as a trustworthy person to do business with).  Indeed, as a result of the eviction (and late payments at the 6th Street Warehouse), the SE Counterclaimants can no longer even qualify for commercial leases (based on the damage to the relationships with his previous landlords).  *See* Sawaf Decl., ¶18.  A business neighbor of the SE Counterclaimants will no longer even "look at Sawaf in the face" because of the issues caused by storing Pasiphae's product.  It has become nearly impossible to operate a logistics business given the inability to secure safe storage/warehouses.  *See* <u>Id</u>.

The SE Counterclaimants sincerely believe Pasiphae acted with malice, as there is no other explanation for such a conscious disregard for the SE Counterclaimants' business interests and rights.  After Pasiphae initiated the instant action, SE Counterclaimants learned that Drada has a reputation for convincing people to give him/Pasiphae money (or provide services) -- based on promises of a

---

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

great return -- and then "disappearing" after having bilked everyone for what he needs.  Unfortunately, the SE Counterclaimants learned (the hard way) that Drada, and his company, Pasiphae, are essentially "fraudsters."  *See* Sawaf Decl., ¶19.

### C.    <u>Intentional Misrepresentation.</u>

Throughout 2022, Drada repeatedly advised Sawaf via email, telephone, and text communications, that he (on behalf of Pasiphae) would pay the SE Counterclaimants for the storage and logistic services, **as well as a percentage of the profit ultimately derived from the sale of the Product.**  *See* Sawaf Decl., ¶20. Notwithstanding, Pasiphae failed to pay the amount due and owing.  *See* <u>Id</u>.

After Pasiphae repeatedly failed to pay outstanding invoices, Drada would [again] promise to pay and include the SE Counterclaimants in the profits, as well as cover the losses associated with the eviction from the Brickell Street warehouse. The SE Counterclaimants reasonably relied on such representations.  Indeed, the SE Counterclaimants relied on Pasiphae's representations when deciding whether to continue to provide storage and logistic services to Pasiphae.  *See* Sawaf Decl., ¶21.  The fact that they continued to provide such services evinces such reliance. *See* <u>Id</u>.

The SE Counterclaimants subsequently realized that Pasiphae's representations were false (as the latter has never paid them what is due and owing).  The SE Counterclaimants believe that Pasiphae knew the representations were false when it made them and/or made such representations with reckless disregard for the truth.  *See* Sawaf Decl., ¶22.

The SE Counterclaimants also believe that Pasiphae intended that they rely on the above deceit/misrepresentations (namely, that Pasiphae could and would pay for services rendered, include them in the profits from the sale of the Product, and help with costs resulting from the eviction).  *See* Sawaf Decl., ¶23.  Indeed, common sense dictates that Pasiphae would "continue to misrepresent" so long as

the SE Counterclaimants provided services for free.

To-date, Pasiphae has failed to pay the full amount due and owing to the SE Counterclaimants, include them in any "profit-sharing," and/or help with any expense resulting from the eviction.  The SE Counterclaimants' reliance on Pasiphae's intentional and malicious misrepresentations were a substantial factor in causing the harm as alleged herein.  **Pasiphae ultimately re-took possession of the Product (per this Court's Order) and, presumably, has since sold it.  The SE Counterclaimants have never been paid their promised share of the profits.**  *See* Sawaf Decl., ¶24.

### D.    The *Eitel* Factors Have Been Satisfied.

The Court, in its discretion, may grant or deny a motion for default judgment.  In conducting its evaluation, the Court considers the following: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *See* Eitel v. McCool, 782 F.2d 1470, 1471 72 (9th Cir. 1986); *see also* Aldabe v. Aldabe, 616 F. 2d 1089, 1092 (9th Cir. 1980).

### 1.  The Possibility of Prejudice to the [SE Counterclaimants]

As set forth above, the SE Counterclaimants have undoubtedly suffered monetary damages as a result of Plaintiff's unlawful and malicious conduct.  Thus, it logically follows that to deny the instant  Motion would result in severe prejudice to the moving party.  Indeed, the SE Counterclaimants would be left without other recourse for recovery (if forced to litigate this matter against a party that refuses to participate).  *See* PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also* United States v. High Country Broad Co., Inc., 3 F. 3d

1244, 1245 (9th Cir. 1993).

## 2. Merits of Claim and Sufficiency of Counterclaims

As thoroughly addressed above, the SE Counterclaimants have satisfied the requisite elements for each of their claims against Plaintiff. The latter's failure to participate (or offer any evidence in opposition) effectively constitutes an admission by a party-opponent. *See* FTC v. Stefanchik, 559 F. 3d 924, 927 (9th Cir. 2009). Thus, the SE Counterclaimants have met their burden. *See* Id.

## 3. The Sum of Money at Stake

The Court must consider the amount of money at stake in relation to the seriousness of [Plaintiff's] conduct. If the amount at stake is proportional to the harm caused by [the Plaintiff's] conduct, default judgment is warranted." *See* Landstar Ranger, Inc. v. Parth Enters, Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Again, as addressed herein, the SE Counterclaimants have satisfied the elements for each of their asserted claims, including the existence of damages suffered by SE. *See* Sawaf Decl., ¶¶1-24.

## 4. Possibility of a Dispute Concerning Material Facts

It is well-settled that when "the moving party supports its claims with ample evidence and the defaulting party makes 'no attempt to challenge the accuracy of the allegations in the [cross-complaint], no factual disputes exist that precludes entry of default judgment." *See* Landstar Ranger v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Again, the SE Counterclaimants have provided more than "ample evidence" in support of its Motion, and Plaintiff has failed to challenge the accuracy of SE Counterclaimants' allegations or evidence.

## 5. Whether the Default was Due to Excusable Neglect

On November 7, 2023, this Court granted Pasiphae's attorneys' motion to withdraw as counsel of record. Because a corporation (such as Pasiphae) cannot

appear in federal court unless represented by counsel, the Court also set an OSC re: dismissal for failure to retain replacement counsel.  *See* Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-202 (1993). The OSC was set for December 15, 2023.  *See* Id, Exhibit "A."  Plaintiff failed to ever retain new counsel; therefore, the Court struck its Answer.  Plaintiff has never offered any evidence of "excusable neglect."

### 6.  Public Policy Favoring Decisions on the Merits

Where a party fails to respond to a [Cross-Complaint], such as here, "a decision on the merits is impractical, if not impossible."  *See* Eitel, *supra*, 782 F.2d at 1472.  Here, Plaintiff has effectively abandoned this case.  Thus, on balance, the SE Counterclaimants should be entitled to default judgment.

## III.  <u>CONCLUSION</u>

Based on the foregoing, the SE Counterclaimants respectfully request the Court enter default judgment in their favor and against Pasiphae Holdings, Inc. as follows:[1]

1. Consequential Damages: $450,000;

2. Loss of Past and Future Economic Benefit: $250,000;

3. Damage to Business Reputation and Goodwill: $300,000;

///

///

---

[1]  *See* Proposed Order/Judgment submitted concurrently herewith.

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.

14

4. Upon execution of this Order, the SE Counterclaimants shall submit a proposed judgment consistent with the Order described herein within fourteen (14) days of the date of execution.

Dated: February 10, 2025        **FORSTROM LAW**


By:*/s/* ERIC A. FORSTROM

ERIC A. FORSTROM

**Attorneys for Defendants and Counterclaimants, SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF**

## <u>DECLARATION OF ERIC A. FORSTROM</u>

I, Eric A. Forstrom, declare:

1.     I am the principal attorney at FORSTROM LAW, counsel of record for Defendants and Counterclaimants SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF (hereinafter collectively, "SE Counterclaimants").

2.     Plaintiff Pasiphae Holdings, Inc. (hereinafter, "Pasiphae") is not a minor, nor an incompetent person, nor in the military or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

3.     Notice of this Motion has been served per Federal Rules of Civil Procedure, Rule 55(b)(2).

4.     Notice of this Motion has been served on Pasiphae on September 6, 2024, pursuant to Local Rule 55-1.

5.     On November 7, 2023, this Court granted Pasiphae's attorneys' motion to withdraw as counsel of record.  Because a corporation (such as Pasiphae) cannot appear in federal court unless represented by counsel, the Court also set an OSC re: dismissal for failure to retain replacement counsel.  On or about May 31, 2024, this Court dismissed Pasiphae's Complaint based on its failure to retain "replacement counsel."

6.     On July 12, 2024, this Court granted the SE Counterclaimants' motion to strike Pasiphae's Answer.

///

///

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

7.     On August 10, 2024, this Court entered default against Pasiphae.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10th day of February 2025, in Huntington Beach, California.


By: _____*Eric Forstrom*_____
Eric A. Forstrom, Declarant

---

**PROOF OF SERVICE**

STATE OF CALIFORNIA    )
COUNTY OF ORANGE                )

     I am a resident of or employed in the County of Orange, State of California.  I am over the age of 18 and am not a party to the within action.  My business is located at 412 Olive Avenue, Suite 512, Huntington Beach, California 92648.

     On February 10, 2025, I served a document described as **DEFENDANTS AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ERIC A. FORSTROM; and DECLARATION OF FRANK SAWAF** on all interested parties in said action as stated on the attached Service List.

( X )  **BY MAIL, as to Counterclaim Defendant Pasiphae Holdings, Inc., only,** as follows:

     (  )  **STATE** - I am "readily familiar" with Forstrom Law's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Huntington Beach, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing affidavit.

     ( X )  **FEDERAL** – I deposited such envelope in the United States mail at Huntington Beach, California, with postage thereon fully prepaid.

( X )  **BY ELECTRONIC MAIL** as follows: I caused a copy of such document to be electronically served on the email address(es) set forth on the attached Service List.

(  )  **BY PERSONAL SERVICE** as follows: I caused a copy of such documents to be delivered by hand to the attorney of record of the addressee between the hours of 8:00 a.m. and 5:00 p.m.

(  )  **STATE** – I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

( X )  **FEDERAL** – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     Executed on February 10, 2025, in Huntington Beach, California.


_____
*Eric Forstrom*
**ERIC A. FORSTROM**

---

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

18

## SERVICE LIST

**United States District Court, Central District of California**
**Case No. 5:23-cv-186**

**PASIPHAE HOLDINGS, INC. v. SE LOGISTIX, CORP. et al.**

| | |
|---|---|
| Pasiphae Holdings, Inc.<br>115 East Palm Midway<br>Miami Beach, Florida 33328<br><br>Email: federico@pasiphaeholdings.com<br><br>Plaintiff and Counterclaim Defendant,<br>In Pro Per | Ghazi Ashkar<br>1276 W. 7th Street<br>Upland, California 91786<br><br>Tel: (661) 547-409<br>Email: ghaziashkar@aol.com<br><br>Defendant,<br>In Pro Per |

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

Eric A. Forstrom (SBN 237695)
**FORSTROM LAW**
**412 Olive Avenue, Suite 512**
**Huntington Beach, CA 92648**
**Tel: (310) 562-8308**
**Email: eforstrom@forstromlaw.com**

**Attorneys for Defendants and Counterclaimants,**
**SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| PASIPHAE HOLDINGS, INC. a Florida Corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>SE LOGISTIX, CORP. a California Corporation; FRANK SAWAF a/k/a FAISAL M. ALSAWAF; DELMAR COMMERCIAL REAL ESTATE SERVICES, a California Corporation; GHAZI ASHKAR; JOHN DOES 1 -10; and ABC CORPS. 1-10,<br><br>            Defendants.<br><br>_____<br><br>AND COUNTERCLAIMS.<br>_____ | Case No.: **5:23-cv-186-SSS-SHKx**<br>**Assigned to the Hon. Sunshine Suzanne Sykes**<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS AND COUNTERCLAIMANTS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**<br><br>**Hearing:**<br>**Date:**       **March 21, 2025**<br>**Time:**       **2:00 p.m.**<br>**Dept.:**       **Courtroom 2**<br>**Location:  3470 Twelfth Street**<br>                 **Riverside, CA 92501** |

The motion for entry of default judgment against Pasiphae Holdings, Inc.

(hereinafter, "Pasiphae") by Defendants and Counterclaimants SE LOGISTIX,

---

**[PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF DEFAULT**
**JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF (hereinafter collectively, the "SE Counterclaimants") came on regularly for hearing upon notice in Courtroom 2 of the above-entitled Court, the Honorable Sunshine Suzanne Sykes, presiding.

The Court, having reviewed and considered all papers in support of and in opposition to the Motion (if any), finds, adjudges, concludes the following:

1.  SE Counterclaimants suffered monetary damages as a result of Plaintiff's unlawful and malicious conduct.  Thus, the SE Counterclaimants would suffer severe prejudice if denied relief via the instant Motion.  *See* PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also* United States v. High Country Broad Co., Inc., 3 F. 3d 1244, 1245 (9th Cir. 1993).

2.  The SE Counterclaimants submitted sufficient evidence establishing the requisite elements in support of each cause of action asserted against Plaintiff.  Further, Plaintiff's failure to participate (or offer any evidence in opposition) effectively constitutes an admission of guilt.  *See* FTC v. Stefanchik, 559 F. 3d 924, 927 (9th Cir. 2009).  Thus, the SE Counterclaimants have met their burden.

3.  The amount of money at stake is proportional to the harm caused by Plaintiff's conduct.  *See* Landstar Ranger, Inc. v. Parth Enters, Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

4.  Given Plaintiff's failure to make any attempt to "challenge the accuracy of the allegations asserted in the Cross-Complaint, the Court concludes that no factual disputes exist that "would preclude entry of default judgment."  *See* Landstar Ranger v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

5. Plaintiff's Default is not due to any "excusable neglect." On November 7, 2023, this Court granted Pasiphae's attorneys' motion to withdraw as counsel of record. Because a corporation (such as Pasiphae) cannot appear in federal court unless represented by counsel, the Court also set an OSC re: dismissal for failure to retain replacement counsel. *See* <u>Rowland v. California Men's Colony, Unit II Men's Advisory Council</u>, 506 U.S. 194, 201-202 (1993). The OSC was set for December 15, 2023. Plaintiff failed to ever retain new counsel; therefore, the Court struck its Answer. Plaintiff has never offered any evidence of "excusable neglect."

6. Where a party fails to respond to a Cross-Complaint, "a decision on the merits is impractical, if not impossible." *See* <u>Eitel</u>, *supra*, 782 F.2d at 1472. Here, Plaintiff has effectively abandoned this case. Thus, on balance, the SE Counterclaimants should be entitled to default judgment.

BASED ON THE FOREGOING, THE COURT HEREBY ENTERS DEFAULT JUDGMENT AGAINST PLAINTIFF AND IN FAVOR OF THE SE COUNTERCLAIMANTS AS FOLLOWS:

1. Consequential Damages: $450,000;

2. Loss of Past and Future Economic Benefit: $250,000;

3. Damage to Business Reputation and Goodwill: $300,000;

///

///

4.  Upon execution of this Order, the SE Counterclaimants shall submit a proposed judgment consistent with the Order described herein within fourteen (14) days of the date of execution.

**IT IS SO ORDERED.**

Dated:                          By: _____

Hon. Sunshine Suzzane Sykes

*Respectfully Submitted By:*
Eric A. Forstrom (SBN 237695)
FORSTROM LAW
412 Olive Avenue, Suite 512
Huntington Beach, CA 92648
Tel: (310) 562-8308
Email: eforstrom@forstromlaw.com

Attorneys for Defendants and Counterclaimants,
SE LOGISTIX, CORP., a California Corporation, and FRANK SAWAF a/k/a FAISAL M. ALSAWAF

**[PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST PASIPHAE HOLDINGS, INC.**

4